IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Cause No. CR 21-32-BLG-SPW |
| Plaintiff/Respondent, | CV 23-54-BLG-SPW |
| vs. | ORDER DENYING § 2255 MOTION AND DENYING CERTIFICATE OF APPEALABILITY |
| MARK EUGENE BENTON, | |
| Defendant/Movant. | |

This case comes before the Court on Defendant/Movant Mark Eugene Benton's ("Benton") amended motion to vacate, set aside, or correct his sentence, pursuant to 28 U.S.C. § 2255. Benton is a federal prisoner proceeding pro se; he is also serving concurrent state sentences and is presently incarcerated at the Crossroads Correctional Center in Shelby, Montana.

This Court had previously entered a stay in this matter following Benton's request. (Docs. 44 & 45.) Benton now requests that the stay be lifted. (Doc. 46.) The motion will be granted.

Benton seeks leave of the Court to amend his § 2255 motion. (Doc. 47.) That request will also be granted, and the Court will consider the claims contained

1

in the amended motion.

Benton also asks this Court to assume jurisdiction over his state matter, Cause No. DC-05-0343, concerning an Incest conviction handed down in Yellowstone County.  (Doc. 52.)  That sentence was revoked in December 23, 2022, for a probation violation.[1]  Benton is also serving a concurrent state sentence for Failure to register as a Sexual or Violent Offender. Benton believes that this Court should assume jurisdiction over his state Incest case because it is "joined to the instant case by the same probation arrest with no probable cause."  (Doc. 52 at 1.)

Benton's motion for this Court to assume jurisdiction will be denied. Federal courts are courts of limited jurisdiction and possess only that power authorized by the Constitution and federal statutes.  *Rasul v. Bush*, 542 U.S. 466, 489 (2004).  As a court of limited jurisdiction, this Court has an obligation to dismiss claims for which there is a lack of subject matter jurisdiction.  *Demarest v. United States*, 718 F. 2d 964, 965 (9th Cir. 1983); see also, *Attorneys Trust v. Videotape Computer Products, Inc.*, 93 F. 3d 593, 594-95 (9th Cir. 1996).  Federal district courts do not have appellate jurisdiction over state courts, whether by direct appeal, mandamus, or otherwise.  *See e.g.*, *Rooker v. Fid. Trust Co.*, 263 U.S. 413,

---

[1] See Montana Correctional Offender Network: https://app.mt.gov/conweb/Offender/2099272/ (accessed June 11, 2024).

425-16 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 482-86 (1983); see also, *MacKay v. Pfeil*, 827 F. 2d 540, 543 (9th Cir. 1987); *Atlantic Coast Line R. Co. v. Brotherhood of Locomotive Engineers*, 398 U.S. 281, 296 (1970) ("lower federal courts possess no power whatever to sit in direct review of state court decisions"). Thus, it would be entirely improper for this Court to intervene in Benton's state court proceedings.

The remainder of Benton's pending motions, (Docs. 48, 49, and 53), are moot in light of the denial of his § 2255 motion, as further explained herein. They will also be denied.

## I.    Preliminary Review

Before the United States is required to respond, the Court must determine whether "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see also* Rule 4(b), Rules Governing Section 2255 Proceedings for the United States District Courts. A petitioner "who is able to state facts showing a real possibility of constitutional error should survive Rule 4 review." *Calderon v. United States Dist. Court*, 98 F.3d 1102, 1109 (9th Cir. 1996) ("*Nicolas*") (Schroeder, C.J., concurring) (referring to Rules Governing § 2254 Cases). But the Court should "eliminate the burden that would be placed on the respondent by ordering an unnecessary answer." Advisory Committee Note (1976), Rule 4, Rules Governing § 2254

Cases, *cited in* Advisory Committee Note (1976), Rule 4, Rules Governing § 2255

Proceedings.

## II. Background

On May 20, 2021, a grand jury indicted Benton on one count of being a

Prohibited Person in Possession of a Firearm and Ammunition, a violation of 18

U.S.C. § 922(g)(1). (*See* Indictment, Doc. 2 at 1.)

During the course of these proceedings, Benton had two attorneys.  While

represented by his first attorney, Steven C. Babcock ("Mr. Babcock"), Benton

appeared before Magistrate Judge Timothy Cavan for a detention hearing.  Benton

was ordered detained pending further proceedings. (*See* Docs. 20 & 21.)  Benton,

through counsel, subsequently filed a motion to change his plea and a signed plea

agreement.  (Docs. 25 & 26.)  The change of plea hearing was conducted on

November 23, 2021, before the undersigned.  Benton pled guilty to the count

contained in the indictment and explained why he was guilty.  This Court accepted

his guilty plea, finding that Benton was competent to enter his plea and did so

knowingly and voluntarily. (*See* Doc. 30.)

On March 18, 2022, Mr. Babcock moved to withdraw as Benton's attorney.

(Doc. 34.)  Apparently, Benton was dissatisfied with Mr. Babcock's representation

and a breakdown in communication resulted.  (*Id*. at 2.)  The motion to withdraw

was granted and Nicole Gallagher ("Ms. Gallagher") was appointed to represent

Benton.  (Doc. 35.)

The matter proceeded to sentencing without further issue.  On May 18, 2022, the undersigned sentenced Benton to the Bureau of Prisons for a period of 21 months, followed by a 3- year term of supervised release.  (*See* Judg. Doc. 39.) Benton did not file a direct appeal.

On April 30, 2023, Benton timely filed the instant Section 2255 motion. (Doc. 42); *see also* 28 U.S.C. § 2255(f)(1); *Houston v. Lack*, 487 U.S. 266, 276 (1988).

### III. Claims and Analysis

The Court has considered all of Benton's challenges to the validity of his conviction and sentence.  For the reasons explained below, Benton's § 2255 motions will be denied.

### A. Legal Standard

"A prisoner in custody under a sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States [...] may move the court which imposed the sentence to vacate, set aside or correct the sentence."  28 U.S.C. § 2255(a).  To warrant relief under § 2255, a prisoner must allege a constitutional, jurisdictional, or otherwise "fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent

with the rudimentary demands of fair procedure." *United States v. Timmreck*, 441 U.S. 780, 783 (1979)(*quoting Bowen v. Johnston*, 306 U.S. 19, 27 (1939)). In contrast, "[e]rrors of law which might require reversal of a conviction or sentence on appeal do not necessarily provide a basis for relief under § 2255." *United States v. Wilcox*, 640 F. 2d 970, 973 (9th Cir. 1981).

### B. Waiver

As part of Benton's plea agreement, he made the following express waiver:

> The defendant understands that the law provides a right to appeal and collaterally attack the sentence imposed in this case. 18 U.S.C. § 3742(a). The prosecution has a comparable right of appeal. 18 U.S.C. § 3742(b). By this agreement the defendant waives the right to appeal any aspect of the sentence, including conditions of probation or supervised release, if the sentence imposed is within or below the guideline range calculated by the Court, regardless of whether the defendant agrees with that range. The United States waives its right to appeal any aspect of the sentence if the sentence imposed is within or above the guideline range calculated by the Court.

> The defendant also waives the right to challenge the sentence in a collateral proceeding pursuant to 28 U.S.C. § 2255. This waiver does not prohibit the right to pursue an action alleging ineffective assistance of counsel.

(*See* Plea Agreement Doc. 26 at 6-7.)

The allegations in a Section 2255 motion do not present a claim upon which relief can be granted if the petitioner has waived his right to make a collateral attack. *See U.S. v. Navarro-Botello*, 912 F. 2d 318, 321 (9th Cir. 1990); *U.S. v. Abarca*, 985 F. 2d 1012, 1014 (9th Cir. 1993). While Benton did waive his right to

6

collaterally challenge his sentence, he did not waive his right to pursue an

ineffective assistance of counsel ("IAC") claim. Because the IAC claim is

intertwined with his Fourth Amendment challenges and challenge to the

voluntariness of his guilty plea claims, the Court will address each below. *See e.g.,*

*Washington v. Lampert*, 422 F. 3d 864, 871 (9th Cir. 2005)(collateral attack waiver

unenforceable with respect to ineffective assistance of counsel claim challenging

voluntariness of waiver); *U.S. v. Pruitt*, 32 F. 3d 431, 433 (9th Cir. 1994) (doubting

whether "a plea agreement could waive a claim of ineffective assistance of counsel

based on counsel's erroneously unprofessional inducement of the defendant to

plead guilty or accept a particular plea bargain.")

The Court finds, however, that Benton's Claim 3 of fraud and misconduct,

advanced pursuant to Federal Rule of Civil Procedure 60(b)(3), fails to state a

claim that his sentence was imposed in violation of the Constitution or federal law;

therefore, it has also been waived. Similarly, Benton's Claim 7, aimed at the acts

of his state probation officer, fails to support a reasonable inference that malicious

prosecution occurred in his federal proceedings and is likewise subject to the

waiver. Both of these claims will be denied.

### C. Benton's Claims

In the amended motion, Benton advances the following claims:

1.    Fruit of the poisonous tree;
2.    Ineffective Assistance of Counsel;

3.    Fraud, misrepresentation, misconduct;
4.    Illegal search and seizure;
5.    Manufactured false evidence;
6.    Coerced guilty plea; and,
7.    Malicious prosecution

(*See generally* Doc. 47-1 at 4-12.)  As set forth above, Claims 3 and 7 have been

waived and will not be addressed further. Benton's Claims 1, 4, and 5, all involve

his initial seizure and the search that ensued and ultimately led to his federal

indictment.  Those Fourth Amendment claims will be addressed together.

**1. Claims 1, 4, and 5**

**i.    Summary of Benton's Fourth Amendment Claims**

On December 31, 2020, state probation officers were notified by Hal Lewis

of the South Central Treatment Associates that he would no longer be willing to

provide sex offender treatment for Benton.  The state probation officers responded

to the treatment center to arrest Benton who was scheduled to report there at 11:30

that morning.  After arresting Benton and placing him in their vehicle for transport,

officers advised Benton they would be searching his vehicle.  Benton advised

officers they would find a smart phone in the vehicle.  Although Benton stated he

would prefer that the officers not search his phone, the phone was searched.  The

probation officer found messages from Benton's girlfriend regarding using "pills."

Also, the officer saw photos of what appeared to be a methamphetamine pipe,

scales, and a gun.  A decision was made to search Benton's residence.

8

Following an initial search of the residence, officers discovered what appeared to be methamphetamine inside a safe. The state probation officers then contacted the Billings Police Department to assist in the search and in opening additional safes. A Ruger Mark III .22 caliber semi-automatic pistol was located in a safe. ATF Special Agents also responded to the scene. Additional suspected methamphetamine and marijuana, scales, baggies, and drug paraphernalia were found. The drugs later tested positive for methamphetamine and marijuana. *See* (Doc. 47-1 at 4); *see also* (Doc. 41 at 5-6.) Benton asserts that the search was "without warrant or any other authorization in place." (Doc. 47-1 at 4.)

In May of 2021, Benton was indicted on the federal gun charge. He also was charged with Failure to Register as a Sexual Offender out of Yellowstone County. (Doc. 47-1 at 5.)

Benton argues that the State Probation officers initiated revocation procedures without probable cause, because he had been compliant with his Sexual Offender Treatment. (Doc. 47-1 at 6.) Accordingly, Benton believes all evidence obtained in the search following his arrest is "fruit of the poisonous tree" and must be excluded. (*Id.*) Benton goes on to argue that the unlawful search violated his rights under the Fourth Amendment. (*Id.* at 10.) He believes because he did not receive any state charges as a result of the items obtained in the "illegal" search and seizure, this underscores the fact that the search was unlawful. Benton asserts

that the probation officers needed a warrant because the search exceeded its

permissible scope.  Finally, Benton argues that the photo of the handgun that the

probation officers relied upon to search his residence, was taken after the fact, and

was thus "manufactured" by state Probation Officer Crystal Stevenson.  (*Id.* at 11.)

As a preliminary matter, this Court would note that the Presentence

Investigation explains that while Benton did initially complete sex offender

treatment in 2013, following a 2014 revocation he was ordered to re-enroll in

treatment upon his release from custody.  In November of 2020, it was determined

that Benton was dishonest during the intake process at South Central Treatment

Associates.  (*See* Doc. 41 at 17.)  On December 31, 2020, the Director of the

program informed Benton's supervising officer that they were unwilling to provide

Benton further treatment.  (*Id.* at 5.)  Thus, Benton's claim that he had been fully

compliant with his treatment is inaccurate.

### ii.   *Stone v. Powell* preclusion

The gist of Benton's contentions are that the evidence against him was

obtained in violation of the Fourth Amendment.  But these claims all involve the

exclusionary rule and are not cognizable in a 2255 proceeding.  Pursuant to *Stone*

*v. Powell*, 428 U.S. 465 (1976), a federal court may not grant § 2255 habeas corpus

relief on the basis that evidence obtained in an unconstitutional search or seizure

was introduced during the proceedings, where the defendant was provided an

10

opportunity to fully and fairly litigate his Fourth Amendment claim before
petitioning the federal court for collateral relief. *See Tisnado v. United States*, 547
F. 2d 452, 456 (9th Cir. 1976).

Benton does not show that he did not have a full and fair opportunity to
challenge the search. He did not move to suppress the evidence before entering his
guilty plea and did not raise such a claim on direct appeal. "The relevant inquiry is
whether petitioner had the opportunity to litigate his claim, not whether he did in
fact do so or even whether the claim was correctly decided." *Ortiz-Sandoval v.
Gomez*, 81 F. 3d 891, 899 (9th Cir. 1996). These claims must be denied under
*Powell*.

Similarly, Benton's suggestion that a warrant was required to arrest him, and
the scope of the residential search was overly broad, is without merit. Benton was
under state supervision at the time of his arrest. A search of his vehicle and
residence was authorized upon reasonable suspicion that he was not complying
with the conditions of his supervision. "Any probation or parole officer may arrest
the parolee without a warrant." Mont. Code Ann. § 46-23-1023(2). This same
provision applies to probationers. *See* MCA § 46-23-1012(2). Moreover, the
photo of a gun contained on Benton's phone was not the sole piece of evidence that
caused officers to suspect he was violating the conditions of his supervision. His
attempt to challenge the actions of the state actors does not affect the validity of his

11

conviction or sentence, accordingly, they do not support further proceedings under § 2255.

## 2. Claim 2- Ineffective Assistance of Counsel

The Sixth Amendment guarantees "the right to effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n. 14 (1970). A petitioner claiming ineffective assistance of counsel must allege specific facts which, if proved, would demonstrate that (1) counsel's actions were "outside the wide range of professionally competent assistance," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 687-690 (1984). Mere conclusory allegations do not prove that counsel was ineffective. *See Shah v. United States*, 878 F.2d 1156, 1161 (9th Cir. 1989).

A petitioner fails to state a claim for ineffective assistance by failing to allege facts sufficient to meet either the "performance" or "prejudice" standard, and the district court may summarily dismiss his claim. Stated differently, "[t]o be entitled to habeas relief due to the ineffectiveness of defense counsel, petitioner must establish both that counsel's performance was deficient and that the deficiencies prejudiced the defense." *Medina v. Barnes*, 71 F.3d 636, 368 (9th Cir. 1995) (*quoting Strickland*, 466 U.S. at 687, 689). The court evaluates "counsel's performance from [their] perspective at the time of that performance, considered *in*

*light of all the circumstances*, and we indulge a strong presumption that counsel's conduct fell within the 'wide range of reasonable professional assistance.' " *Medina*, 71 F.3d at 368 (emphasis added).

Benton asserts that his first attorney, Mr. Babcock spent many years as a prosecutor for the state and has connections and friends within the prosecutor's office, which points to his collusion against Benton. This information is based solely upon Benton's conclusory speculation; it is not a specific fact that demonstrates Mr. Babcock performed deficiently. Moreover, this information is incorrect. Mr. Babcock has been a federal public defender since 2005; the Court is unaware of him ever working as a prosecutor, either federally or for the state.[2]

Benton also asserts that Mr. Babcock coerced him with threats into entering a guilty plea. He believes both Mr. Babcock and Ms. Gallagher failed to investigate or challenge his unlawful arrest. He claims that they knew his indictment was fraudulent and based upon manufactured evidence. He suggests that Ms. Gallagher should have sought to retract his guilty plea due to the use of the photo found on his phone to support his arrest and search of his residence. (Doc. 47-1 at 7-9.)

Benton alleges Mr. Babcock told him the plea offer was "as good as [he

---

[2] *See e.g.*: https://www.nacdl.org/Article/May2013-GideonsChampions; *see also* https://mt.fd.org/attorneys (accessed June 14, 2024).

was] going to get" and that if Benton did not sign the agreement Mr. Babcock would "see to it" that Benton got ten years. (Doc. 47-1 at 7.) The Court is dubious of Benton's assertion of coercion. Particularly because it conflicts with statements Benton made under oath during his change of plea hearing, discussed further below. Of particular note, Benton affirmed that his plea was voluntary and that it was being freely made without promises, force or threats. (*See e.g.*, Doc. 30.) While the Court believes Mr. Babcock advised Benton of the maximum 10-year penalty associated with the charge against him, as evidenced by the plea agreement and Benton's plea colloquy, the record before the Court directly contradicts Benton's claim of coercion.

Similarly, as discussed above, Benton's arrest for violating the conditions of his state supervision was not unlawful. The probation and parole officers who effectuated his arrest and performed the subsequent search of his vehicle and home were acting pursuant to state law. Thus, Mr. Babcock and Ms. Gallagher were under no obligation to mount a meritless challenge. Moreover, the photo of the gun was not the only item of evidence, obtained from Benton's phone, that led to the search of his residence. As set forth above, there were messages between Benton and his girlfriend regarding drug use. The phone also had photos of what appeared to be a methamphetamine pipe, in addition to other drug paraphernalia. Thus, there was adequate information to support a search of Benton's residence.

14

Or put another way, even if the photo of the gun contained on Benton's phone was not considered, there was still sufficient evidence against him to believe he had violated the conditions of his state supervision that would support a search. Benton has not demonstrated that either Mr. Babcock or Ms. Gallagher performed deficiently by advising him that a challenge to the state search would be futile.

Viewed against the record, Benton's conclusory allegations about manufactured evidence, a fraudulent indictment, and a coerced guilty plea warrant summary dismissal. As set forth above, the crux of these claims stems from Benton's mistaken belief about Fourth Amendment violations. These claims are based only upon Benton's own speculations and conclusions. And although couched as an ineffective assistance of counsel claim, Benton wholly fails to address either the "performance" or "prejudice" prong of *Strickland* as they apply to both of his attorneys. Thus, the claim necessarily fails.

### 3. Claim 6- Voluntariness of Guilty Plea & Actual Innocence

Benton claims that his guilty plea was induced by coercion and that he is actually innocent of being a felon in possession of a firearm. (Doc. 47-1 at 12.) Benton states that during his second visit with his attorney, Mr. Babcock requested that he sign a waiver of speedy trial so that he would have additional time to investigate where the photos used as probable cause to search Benton's residence came from. (*Id.* at 5.) Sixty days later, Mr. Babcock returned with a plea

agreement and told Benton that it was "as good as it was going to get." (*Id.*)

Benton then claims that Mr. Babcock threatened him and advised Benton if he

didn't sign the agreement, he would personally see to it that Benton got 10 years in

custody. (*Id.*)

Benton signed the plea agreement and the matter proceeded to a change of

plea hearing. Benton then states he obtained new counsel and discussed

withdrawing his guilty plea with attorney Ms. Gallagher. She apparently advised

Benton that if he withdrew, the Government would drag the matter out for years.

(*Id.*) Benton took no further steps, however, to withdraw his guilty plea and

proceeded to sentencing.

Plea agreements are contractual in nature, and their plain language will

generally be enforced if the agreement is clear and unambiguous on its face.

*United States v. Jeronimo*, 398 F. 3d 1149, 1153 (9th Cir. 2005). Guilty pleas must

be "voluntary" and "knowing, intelligent acts done with sufficient awareness of the

relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S.

742, 748 (1970). While a defendant who pleads guilty may challenge the knowing

and voluntary nature of his plea in a Section 2255 proceeding, *see United States v.*

*Kaczynski*, 239 F. 3d 1108, 1113-14 (9th Cir. 2001), "[a] habeas petitioner bears the

burden of establishing that his guilty plea was not voluntary and knowing." *Little v.*

*Crawford*, 449 F. 3d 1075, 1080 (9th Cir. 2006).

16

Benton indicated in the plea agreement that he had discussed the terms with his attorney, agreed to the terms and conditions, and entered the plea freely and voluntarily. (*Id.* at 7-8.)  As part of the plea agreement, Benton admitted that he knowingly possessed a firearm and ammunition, at the time he possessed the firearm and ammunition he knew he had previously been convicted of a crime punishable by imprisonment for a term exceeding one year, and that the firearm and ammunition were shipped in interstate or foreign commerce. (*Id.* at 3.)

Further, during the change of plea hearing held on November 23, 2021, Benton was placed under oath and provided the Court with information regarding his background, education, and employment experience.  Benton indicated that he received a copy of the indictment and understood the charges against him.  He advised the Court that he did not suffer from mental illness and was not under the influence of any substance that would affect his understanding of the proceedings. Benton affirmed his plea was being made voluntarily without any promises, force or threats having been made.  Benton indicated he understood the maximum penalties, as well as the rights he was waiving by entering his guilty plea. Benton explained to the undersigned why he was guilty of the offense as charged.  In accepting his guilty plea, this Court found Benton was competent to proceed and entered his guilty plea voluntarily. (*See generally*, Doc. 30.)

"[T]he representations of the defendant, his lawyer, and the prosecutor at

such a [plea] hearing, as well as any findings made by the judge accepting the plea,

constitute a formidable barrier in any subsequent collateral proceedings."

*Blakledge v. Allison*, 431 U.S. 63, 73-74 (1977). Similarly, sworn statements made

during the plea colloquy "carry a strong presumption of truth." *Muth v. Fondren*,

676 F. 3d 815, 821 (9th Cir. 2012).

Benton's statements made during the plea colloquy were clear and

unambiguous. It was confirmed that the written agreement was the entire

agreement between the parties. (*See e.g.*, Doc. 26 at 8.) Benton did not indicate

that he had been threatened or coerced to enter into the agreement. Benton now

asks this Court to disregard his own sworn statements as well as the written plea

agreement. The circumstances surrounding the entry of his plea, including this

Court's plea colloquy with Benton, defeats Benton's claim. The plea was knowing

and voluntary. *See e.g., U.S. v. Lo*, 839 F. 3d 777, 786-87 (9th Cir. 2016); *U.S. v.

Baramdyka*, 95 F. 3d 840, 843-44 (9th Cir. 1996).

Without providing any additional facts or analysis, Benton also suggests his

guilty plea can be overcome because he is actually innocent of the crime of

conviction. (Doc. 47-1 at 12.) Neither the United States Supreme Court nor the

Ninth Circuit Court of Appeals has resolved whether a freestanding claim of actual

innocence is cognizable on collateral review. *See McQuiggin v. Perkins*, 569 U.S.

383, 392 (2013); *Jones v. Taylor*, 763 F. 3d 1242, 1246 (9th Cir. 2014). In *Herrera*

18

*v. Collins*, 506 U.S. 360, 417 (1993), the Supreme Court assumed without deciding

that "in a capital case a truly persuasive demonstration of 'actual innocence' made

after trial would render the execution of a defendant unconstitutional." The

*Herrera* court indicated that "the threshold showing for such an assumed right

would necessarily be extraordinarily high." *Id*. In summarizing the standard

applicable to a freestanding claim of actual innocence, assuming such a claim is

cognizable, the Ninth Circuit reiterated that "[t]he standard for establishing a

freestanding claim of actual innocence is extraordinarily high" and the showing

"would have to be truly persuasive." *Jones*, 763 F. 3d at 1246. "At a minimum,

the petitioner must go beyond demonstrating doubt about his guilt, and must

affirmatively prove that he is probably innocent." *Id*. (internal citation omitted).

The Supreme Court has defined the standard for a freestanding actual

innocence claim by reference to the lower standard for a gateway claim of actual

innocence under *Schlup v. Delo*, 513 U.S. 298 (1995). In *Schlup*, the Court held

that a petitioner who otherwise would be procedurally barred from presenting a

constitutional claim may obtain review of the claim by demonstrating actual

innocence. *Schlup*, 513 U.S. at 314-15. "In order to pass through the *Schlup*

actual innocence gateway, a petitioner must demonstrate that in light of new

evidence, it is more likely than not that no reasonable juror would have found the

petitioner guilty beyond a reasonable doubt. *Jones*, 763 F. 3d at 1247 (internal

citation omitted). The new evidence must be reliable, and the reviewing court must consider all evidence (new and old) to "make a probabilistic determination about what reasonable properly instructed jurors would do" based on the total record." *Id.*

In *House v. Bell*, 47 U.S. 518, 555 (2006), the Supreme Court held that a freestanding innocence claim "requires more convincing proof of innocence than *Schlup*." The Court concluded that although House had "cast considerable doubt on his guilt- doubt sufficient to satisfy *Schlup's* gateway standard for obtaining federal review despite a state procedural default," he had not met the standard for a freestanding actual innocence claim. *House*, 547 U.S. at 554-55.

Applying these standards, Benton's claim of actual innocence fails. He continues in his suggestion that he was coerced to enter his guilty plea; his claim of coercion is not convincing and is defeated by the record. Moreover, Benton has provided no newly discovered evidence to support his claim of innocence. Thus, he cannot meet the *Schlup* standard. Because his guilty plea is entitled to a strong presumption of truth, it is fully inconsistent with a claim of actual innocence. *See Blackledge*, 431 U.S. at 73-74 (1977)("[T]he representations of the defendant [at a plea hearing] … constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity.")

20

Benton cannot meet the requirements set out by *House* and *Jones* to establish a freestanding actual innocence claim. The "evidence" Benton proposes does not cast doubt on his guilty plea and conviction, let alone demonstrate he is actually innocent of being a prohibited person in possession of a firearm. Accordingly, this claim also fails.

## IV.   Certificate of Appealability

A movant may appeal a district court's dismissal of a § 2255 motion only after obtaining a certificate of appealability from the district court or the circuit court. 28 U.S.C. § 2253( c)(1)(B). "A certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253( c)(2). This standard is satisfied if "jurists of reason could disagree with the district court's resolution of the constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003)(citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Under this standard, the Court concludes that Benton is not entitled to a certificate of appealability. No reasonable jurist would find debatable Benton's failure to demonstrate entitlement to relief on the claims presented in his § 2255 Motion.

//

Accordingly, IT IS ORDERED:

1.  Benton's Motion to Lift Stay (Doc. 46) is GRANTED.  The Clerk of Court is directed to amend the docket accordingly.

2.  Benton's Motion to Amend (Doc. 47) is GRANTED.  The Court has considered Benton's amended § 2255 motion.

3.  Benton's Motion to Assume Jurisdiction (Doc. 52) is DENIED.

4.  Benton's remaining motions (Docs. 48, 49, and 53) are DENIED as moot.

5.  Benton's original  and amended motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255 (Docs. 42 & 47-1) are DENIED.

6.  A certificate of appealability is DENIED. The clerk shall immediately process the appeal if Benton files a Notice of Appeal.

7.  The clerk shall ensure that all pending motions in this case and in CV 23-54-BLG-SPW are terminated and shall close the civil file by entering judgment in favor of the United States and against Benton.

DATED this _25th_ day of June, 2024.

Susan P. Watters
United States District Court Judge